UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RICHARD MILOT,

        Plaintiff,

    v.

FLORIDA SOFT SIDE SOUTH,

        Defendant.

_____/

Case No. 2:26-cv-1194-KCD-DNF

## <u>ORDER</u>

Petitioner Richard Milot has filed a pro se habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] As best the Court can tell, he claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA") and the Fifth Amendment. (*Id.* at 7-9.) Respondents oppose the petition (Doc. 16.) For the reasons below, the petition is **DENIED**.

## I. Background

Milot is a native of Haiti who entered the United States as a refugee in 1994 and adjusted his status to lawful permanent resident. (Doc. 16-1 at 2.) He was then convicted of numerous crimes in the United States. (*Id.* at 3 (listing seven convictions)). In 2011, Milot was ordered removed to Haiti but

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

granted deferral of removal to that country under the convention against torture. (*Id.* at 2, 6-11.) Thus, Milot can be removed from the United States, but not to Haiti.

On November 25, 2025, after Milot was arrested in Miami, an immigration detainer was issued. (*Id.* at 2-4.) On February 18, 2026, Milot was placed in ICE custody. The next day, his release was revoked, and he was issued a Notice of Removal. (*Id.* at 22-23.) Milot was also served with a Notice of Removal to Mexico. (*Id.* at 25.)

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## III. Discussion

Milot argues that his due process rights have been violated because he has not been provided a bond hearing. (Doc. 1 at 7.) Not so. He is subject to a

final removal order. (Doc. 16-1 at 6.) The Immigration and Nationality Act (at § 1231) requires detention of noncitizens during the removal period, which normally begins on the date the removal order becomes administratively final.

According to the only evidence before the Court, there are no pending agency proceedings relevant to Milot's removal. The 2011 removal order is administratively final and ready to be executed. Because he is subject to a final removal order, Milot's detention is governed by § 1231. He is thus not entitled to release, a bond hearing, or any other habeas relief based on the claims asserted in his habeas petition. And his detention does not run afoul of the due process clause because he has only been detained since February 18, 2026. As the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain under § 1231 does not stretch into infinity, but for the first six months, detention is presumptively reasonable. 533 U.S. 678, 701 (2001).

Seemingly recognizing this problem, Milot's petition jumps to *Zadvydas'* burden-shifting framework, claiming that his removal is not likely. (Doc. 1 at 7.) This argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v.*

3

*Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026).

Milot attempts another workaround. He points to earlier periods of detention, seemingly arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 1 at 8.) By combining these distinct periods of confinement, Milot contends that his total time in civil immigration detention exceeds the six-month threshold, which is sufficient to trigger *Zadvydas* review.

District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was

4

detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-

5

month period established in *Zadvydas* was designed to provide the government a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all past detention would force the immediate release of a noncitizen even when their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

Instead, the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the government is acting with an improper motive. If the record reveals a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate. But absent evidence of such bad faith or a deliberate strategy of looping confinement, courts should presume that a subsequent detention is a genuine, independent effort to effectuate removal. This standard strikes the appropriate balance. It alleviates constitutional concerns regarding indefinite, cyclical detention by providing a safeguard against abuse, while simultaneously protecting the government's legitimate,

statutory interest in finalizing deportations when logistical or diplomatic circumstances finally permit.

This approach finds support in both *Zadvydas*'s reasoning and the historical foundations of the vehicle Milot employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts to measure reasonableness in light of the specific circumstances of the case and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at *3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S. 195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and

re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Milot's argument for aggregation falls short. While he points to prior periods of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and rearrest to bypass the six-month presumption or avoid judicial oversight. Without proof of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Milot remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the constitutional authority to hold him.

## IV. Conclusion

Milot's Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close the case.

**ORDERED** in Fort Myers, Florida on May 12, 2026.

Kyle C. Dudek
United States District Judge

9